07-3766 and 15-4308 Odraye Jones versus Margaret Bradshaw oral arguments 30 minutes per side Ms. Bailey for the appellant. Good morning may it please the court my name is Catherine Bailey and I represent Mr. Ackbar. Thank you for having me back today. Today I plan to focus on habeas ground 24 the ineffective assistance of counsel claim for presenting harmful expert testimony. I would like to reserve 10 minutes for rebuttal please that's a change from what I had forecasted. Thank you. At Mr. Ackbar's penalty phase Ohio's prosecutor the lawyer it supplied and the was more likely to be chronically and clinically dangerous because he is black. In Rose v Mitchell justice Blackmun wrote that discrimination on account of race and the administration of justice strikes at the core concerns of the 14th amendment and at fundamental values of our society in our legal system. In the capital sentencing context the supreme court tells us that two other things are certain about racial discrimination. First from Zamp v Stevens and Buck v Davis we know that evidence that links a defendant's race to dangerousness and deathworthiness is unconstitutional period. Second from Turner v Murray we know that capital sentencing hearings present a unique opportunity for racial prejudice to operate undetected and that there is an serious risk that fear of black defendants which can easily be stirred up by the violent facts of an interracial crime might incline a juror to favor the death penalty. The court vacated the death sentence in Turner even though four of those jurors were black. I've noted that all 12 of Mr. Ackbar's jurors were white but more importantly only two were asked a single question about race during the court. These jury issues are not before the court but the context is critical to recognizing the unacceptable risk of prejudice that resulted from the expert testimony and trial counsel's arguments. Because this evidence was patently unconstitutional and because Mr. Ackbar has established cause to excuse any default this court must vacate the death sentence. I have a few additional comments on the merits. First is that at the first argument in this case the warden was asked directly how the evidence here differed from the racialized evidence in Buck. The only credible answer is that it does not. There's no difference between arguing that a man is more likely to be dangerous because he is black and saying that a man is more clinically diagnosable as a future danger because he is black. If anything the formal psychiatric diagnosis makes this type of toxin even more deadly and even more weighty. Dr. Eisenberg, a clinical psychologist told a racially homogenous jury that only one percent of us are psychopaths unless you just just like Dr. Quijano he testified that an immutable characteristic carried with it an increased probability for future violence. As the court wrote in Buck here was hard statistical evidence from an expert to guide an otherwise speculative inquiry. Further in Buck Dr. Quijano actually told the jury don't worry Mr. Buck won't be dangerous in the future. The court still found prejudice. Here Dr. Eisenberg assured the jury over and over again that Mr. Akbar would continue to be dangerous in the future. His condition was chronic and when specifically pressed he refused to opine that his dangerousness would ever cease. Dr. Eisenberg's response to the prosecutor alone establishes prejudice under Buck. But the warden's response doesn't account for anything else in the trial testimony which is dripping with these linkings. I'd like to give the court a few examples. In counsel's opening he expressly links young black men to anger aggression and prison. He tells the jury that Mr. Akbar was born into a culture of violence and then he describes his cultural expert Mr. C who's mainly in the Cuyahoga County area but not exclusively quote works with young particularly black males angry coming out of prison mad at the world not sure why and how he deals with those people. He then has Charles C tell the jury what the world view of the African American youths are and Mr. C doesn't hesitate to say well it's survival by any means necessary. He then cites extreme gang loyalty and the underworld culture that is pervasive quote in those communities. Mr. C then unequivocally confirmed for the jury that Mr. Akbar fits this you use your time effectively and you may want to get back to the merits issue but could you address the procedural default issue before we run out of time? The most efficient way for this court to set aside the procedural default of ground 24 found by the district court is to follow what this court did in Greer v. Mitchell and Henderson v. Palmer and apply a straightforward application of Coleman v. Thompson. You look at the building blocks of this claim trial counsel was clearly ineffective for presenting this testimony because no competent counsel would ever make these arguments the claim can be resolved on the face of the trial transcript. Direct appeal counsel should have raised this claim but he failed to do so. However Mr. Akbar filed a timely application to reopen the direct appeal under Ohio rule 26b and he properly and fully exhausted the layered claim. His application included a claim that his direct appeal counsel was ineffective for failing to raise trial counsel's ineffectiveness quote for presenting conflicting and prejudicial expert testimony that severely undercut Mr. Akbar's mitigation. We know from Joseph B. Coyle and Davey B. Mitchell that even though these claims are analytically distinct he met the general requirement for exhaustion the underlying claim is preserved and the default can be set aside. Okay counsel one of the problems I have is that this is a an appeal from the denial of of the habeas ground 24 from the district court and ground 24 alleged ineffective assistance of trial counsel and that you've argued the merits of that but did was ineffective assistance of appellate counsel raised in the district court in this proceedings as a grounds to excuse the procedural default? No your honor it was not. Okay then how is it before us? The cause argument is before us but I would like to make a few points about that so it is fully exhausted in front of the state courts of Ohio. Okay I agree with that. For purposes of I think it's your duty once the state raises the issue of procedural default you have to go to district court and tell the district court why it is not procedurally defaulted and here raised judicata was argued and Martinez was argued but ineffective assistance of appellate counsel was not argued in the federal district court and therefore I I don't see it before us that's all. I understand judge Griffin I've addressed this in my reply at length but I would like to present some more case law for your review. This court addresses the issue of procedural default de novo it is itself a federal question and it is um at all times Mr. Ackbar has challenged this default this isn't a matter of diligence that the race judicata application was challenged in the first instance does not preclude other meritorious cause arguments to be presented on appeal. No case cited by the warden actually deals with habeas it doesn't deal with the issue of procedural default and it doesn't deal with this situation. I would direct the court to Nasiri versus Mackey which is not mentioned in my reply that site is 967 at 3rd 544. That deals with a procedural ruling below and there the court of appeals did not hold the petitioner to the arguments made by his counsel for a variety of reasons and one of which was a conflict. I've pointed out in my briefing that the only counsel that was appointed to prepare the this court after Mr. Ackbar pointed out that he suffered from a conflict of interest. The equity concerns there are palpable especially when you look at Holland v Florida. Nasiri itself talks about this court's ability to reach cause even if that argument is not presented below. Unlike Nasiri the cause argument here is plain on the face of the record. I would also point out that this court in Maupin used sequential language. It presumes that a petitioner will have a chance to show cause once the finding of the fault is made not simply after it is alleged. In Jacobs v Moore in Van Hook v Bobby and in Thompson v Bell this court undertook cause analyses by looking at the appellate briefs and not getting hung up on the fact that a challenge even in Jacobs I think there wasn't a challenge at all to the fault in front of the district court. Ms. Bailey you argue that switch gears just a little bit maybe you argue that the Ohio court of appeals improperly applied race judicata here and just want to get your thoughts on what new information was presented in this post conviction petition. I know there's a Dr. Eisenberg's diagnosis and has a different diagnosis of post traumatic stress disorder I think but I know there's some other affidavits and affirmations so could you address that? The affidavits in support of the claim in the post conviction petition I mean I think what's important for the court to recognize is that the claim presented in post conviction was almost like a kitchen sink attack against counsel's use of Dr. Eisenberg and the experts and that his coordination that their testimony conflicted Dr. Kenny the neuropsychologist I mean there's tension on the record even in front of the jury about their conclusions particularly about antisocial personality disorder. So those affidavits that were produced in post conviction got to that with the psychologist I didn't trust him you know he threw away my testing results as invalid called me manipulative and antisocial but we did not communicate well and I told my trial lawyer that that I didn't like the guy Dr. Kenny said there was no coordination he didn't get Dr. Eisenberg's report he told counsel in advance of the penalty phase that he disagreed all of this evidence is the record on top of that Dr. Turner rendered a new evaluation and examined the evidence and he reached diagnoses that were more in tune with those of Dr. Kenny and took away the power of this really harmful antisocial personality disorder as the crux of Dr. Eisenberg's testimony. So you know whether or not that rendered an evidentiary hearing is one thing it was certainly enough to overcome the bar but I'd like to point out that because your point is that that the combination of Jones, Kenny, and Turner each of them had evidence to whore the record is that what you're saying that there were things that made it incorrect for the court of appeals of Ohio to say that this was just based on trial evidence. Yes and I'll point out the cases mentioned in my appellant's brief that were not addressed by the warden where similar circumstances where you have a new psychologist entering in post-conviction, a new opinion, new diagnoses that that enough takes you over that. But counsel isn't isn't that a new diagnosis based upon the evidence that was in the trial record and it's my understanding Ohio has a very raised or issues that could have been raised and therefore I think you have to determine that there's there's matters that are not in the record that could not have been raised to overcome the the raised judicata. Isn't that rather than just look at the at the record and come to a different interpretation as to what experts would do you have to actually have something new something that wasn't there. Well he was newly evaluated and I think that's the newness that I'm but isn't isn't it just evaluation based upon the existing record and isn't isn't that uh what's what's improper? No I believe that he met with Dr uh with Mr. Akbar. So so somewhere I got the sense that Turner did meet with Akbar after the you know during this post-conviction phase and that Turner did new tests on Akbar is that correct and that then those tests were reported in the affidavit? Yes he was it was essentially a new expert report as if and and to you know based on new new interpretation new evidence not just things that existed at the time of the trial. No your honor there was no way to reinterpret data from Dr. Eisenberg because he said his data was invalid. He threw out the MMPI. He said that he manipulated the results and therefore he's antisocial. So it's not a repackaging. I also would like to get to the adequacy of rule of getting back to Judge Moore's question. The new testing was not in the existing record so that that is outside the record. Yes I'm sorry that unclear yes. I mean is that that may be your best your best argument that it's not a repackaging of what's already there. It's it's something brand new that had not been done before. Right and interpreting DeHore's the record as an applicant is tricky because if it's outside of the record going back to your point Judge Griffin that I understand the broad application of this but I would also submit that's a very confusing and inconsistent application that a petitioner himself can submit an affidavit talking about what happened in the context of privilege between him and trial counsel. It's not intuitive even under Ohio law that that veil between counsel can be pierced on direct appeal which is supposed to be hinting at what's available in the record that remits to the Supreme Court. What cases I'm sorry go ahead and complete your thought uh well I what cases would would most support your position would that be Greer and Hill from our circuit because we've also got some cases that um they go slightly in the other direction uh perhaps distinguishable but what do you think is most supportive of your argument here case one for race judicata the cases that I cited in my opening brief just a minute please I know you say Greer and you say Hill yes Hartman v Bagley, White v Mitchell, Schweiderman v Smith that affirming that for an ineffective assistance of trial counsel claim it is necessary to know what the uncalled expert would have concluded that's precisely what Dr. Turner was submitting Franklin v Jenkins if a post-conviction claim a new psychologist affidavit and affidavit to the trial defense team as unlike the direct appeal claim which relied wholly on evidence in the record so so on this prong of a way of getting around procedural default we do we get to make a de novo determination of whether the doctrine of under Ohio law of race judicata was improperly applied by the Ohio court of appeals is that an essential component of this yes that this court enjoys review of whether the state procedural bar was misapplied and if we find that the state procedural bar was misapplied then we undertake de novo review of the particular merits issue yes your honor that's correct because the merits were never passed upon by the state court and that's true both in post-conviction and with the corresponding claim in the 26b which I do submit is the cleaner path to merits review because we know from buck that at least a subclaim of this ground 24 would and could have prevailed on direct appeal if the court has no questions on prejudice I will not address it but I did want to point out some of the other linkings in the record that I think are absent from the warden's response I just want to reiterate that in the opening statement council made linkings between race and dangerousness that it occurred several times in the context of the testimony of mr c the cultural expert who talked about the world view of african-american youth and survival by any means that mr akbar came from a culture of violence these linkings were not just present in the testimony of dr eisenberg on direct cross-examination they are peppered throughout the brief and I would direct you to my principal brief for those examples thank you thank you mr willie thank you your honor may it please the court charles l willie assistant attorney general for the state of ohio arguing for the warden your honors the two basic issues in this case are first did the district court correctly deny relief on the claim of ineffective assistance of trial counsel that was presented in the 24th ground of jones's petition now we emphasize your honors that it's critical to look at what the claim actually was that was presented in the post convicted in the in the petition and not presented properly to the state courts the claim that was presented although broadly broadly termed a challenge to the defense's preparation of dr eisenberg the specific allegations were that as a result of that ineffectiveness dr eisenberg's testimony conflicted with other testimony presented by the and overlooked significant mitigating factors that was the claim that was made why is that important pause as all we all can see a claim has two components the legal basis for relief plus the factual allegations underlying that claim notably there was no claim here that dr eisenberg's testimony was infused with racially prejudiced information that claim was not made that claim of course would have been based on the record just like the claims that were actually presented in applying ohio's race judicata doctrine it has been ohio's rule for many years that a claim that is based on the record must be raised on direct appeal including claims of ineffective assistance of counsel this court as such accordingly if a claim is such a claim is raised for the first time in post conviction the state courts will hold under ohio's race judicata doctrine that is barred from review this court has upheld that determination many times as an adequate and independent state ground for relief now here petitioner seems to argue now that well the state courts got it wrong because i presented testimony outside the record in the form of differing opinions but nevertheless the claim remained the same the claim remained that counsel's ineffective handling of preparation of dr eisenberg resulted in information that was conflicting and also failed to bring out mitigating evidence now that doesn't it actually actually eisenberg's testimony actually brought out the opposite and it actually was very harmful to uh to the petitioner and i the question is why call eisenberg to testify at all if it's going to going to hurt your client and uh the defense trial counsel knew what his testimony was but he certainly didn't have to call him and by calling him he just he made it more likely that the the jury was going to find a penalty of death here i mean just just calling the witness i think is just ineffective isn't it your honor that may well be uh an argument as we sit here today it may be an argument that could have been presented to the district court it may be an argument that could have been presented to the state courts but it wasn't the argument what exactly does ground 24 say failing to properly prepare expert witness and to present proper mitigation evidence i mean that that's all about eisenberg isn't yes and no your honor because that could cover a vast number of specific failures on the part of uh preparing and presenting dr eisenberg it could present a vast number of okay what what how how how is an argument even made that eisenberg's how do you how does he even come up with an argument like that well what what i said tell me what tell tell me what it is because i okay i don't quite see how anything that he said would would have helped akbar and tell me tell me how it would i will say this your honor the outset direct answer to your question it's certainly arguable as the testimony brought out during cross-examination was harmful to oh the direct direct testimony too wasn't it i mean this whole his whole test of everything he said was your honor what actually helped akbar in your honor was the theme of the defense here okay i guess i need to know what that is because i the theme of the circumstances under which the defendant grew up was raised the the what he suffered actually as a part of his everyday life was was mitigating in the sense that it was mitigating because for one it did support a psychiatric diagnosis of a recognized mental disease or defect uh which tended to show that that that uh the defendant's actions were not that were less blameworthy because he suffered from the consequences of his environment and which hurt him's ability to act and conform to the law that a state could reasonably decide that framing such an argument in the terms of a mental disease or defect has a tendency to show that this is something beyond the control of the defendant the defendant cannot make choices rationally because of things beyond his control which in fact amount to causing a mental disease or defect but couldn't also do that without injecting race i mean buck talks about the racial toxin of this sort of uh negative uh testimony about you know young black youth i mean could have made the same arguments without making what years i can tell are completely unsupported um statements about the percentages of you know urban african-americans who you know have you know uh this apd antisocial personality disorder uh you know it's the injecting race as the future dangerousness that really makes this problematic isn't that right yes your honor but i would like to point out that again this was brought out at first in cross-examination so in other words this was not presented on dr secondly there was nothing in dr eisenberg's testimony to indicate in any way that somehow the defendant's race should be considered as a relevant factor in determining his sentence we have to this may seem subtle but i think it's a good point the race here was also paired repeatedly with urban with his environment in other words uh his his mitigation was that due to his environment he was given less had less choices there was no suggestion here for example but was he great was he raised in an urban environment yes right yes okay and and uh by all accounts uh again the mitigating testimony that was presented by other witnesses followed this theme completely that again uh he he was really the victim in a certain sense of his circumstances of his upbringing this is not of course an unusual unusual uh type of mitigation it's it's not an unusual uh theory i also like the theory that that his condition is incurable and that therefore he he has no prospect for recovery uh i mean the jury's going to say well you know maybe he ought to be sentenced to death since we were worried that he you know uh he he he's going to have this for the rest of his life and uh he'll be a danger in prison too that is a you know your honor you hit the right that that that's the other side of that's a double-edged sword when you present this type of argument the other side the other edge of the sword is exactly what you said that perhaps this would indicate that well maybe this doesn't you know maybe this is militates against life imprisonment and the defense attempted to address that the the defense did it did address that in the sense that the defense argued that this is not something that's going to that could be expected to occur again that his he he was not a threat to murder uh and uh that was the defense attempted to to that was essentially the defense's argument here uh he was not as a matter of fact dr eisenberg did point out that getting his very incarceration would of course make it uh less likely that he would be able to to uh he would be able to you know act anti-social if you will or commit murder uh the thing would also be a danger in the in the prison if this was an incurable situation that is true your honor that is that is correct uh and again that's part of the that's the kind of part of the double edge of that sword is that uh i would like to point out to make this that uh here we have to first look at the prong there's two prongs of every strickland claim and the first prong is was counsel professionally defense deficient in in choosing dr eisenberg and if the court uh the court uh would yesterday i i did a word search james eisenberg on ohio's uh lexus federal and library and you will see that dr eisenberg has testified many many times in capital cases and particularly he has testified for in favor of petitioners in state post-conviction attacking the effectiveness of trial counsel's preparation secondly in looking here the the petitioner relies on buck versus davis and that really brings us to the second issue presented in this case and that is can those arguments based on buck versus davis sustain habeas corpus relief before this court and we would say no your honor this is clear those arguments were never properly presented to the state courts and they were never properly presented to the district court well weren't they presented weren't they presented in the uh rule uh 26b uh proceeding in the state court challenging the failure to raise on direct appeal the racialized evidence issue you know my my recollection is no there was a there was a a claim of ineffective assistance of trial counsel that allegedly was not presented on direct appeal but i my recollection is it didn't include the buck versus davis claim it couldn't have mentioned buck because buck didn't exist at the time yes that's correct your honor but you see the racially charged if this case indeed presents racially charged and prejudicial testimony akin to what was in buck versus davis then one would think that you would not need to have a case from the supreme court to raise this question and indeed the strongest indication that this testimony did not rise to type of testimony involved in buck versus davis is no one alleged it until rule 60b no that just could be that the attorneys did not you're not effective essentially until then i guess my question is you made reference about selecting dr eisenberg and of course he's got a rich history of you know teaching and and and providing reports and testifying in court i don't know that it's so much the selection of dr eisenberg it's the preparation of dr eisenberg and the fact that you have put on what you select and prepare a witness and don't know that he is going to testify as i understand it that urban african americans are 30 times more likely to have this anti-social personality disorder and be more of a danger going forward that that's that's if that's questioned i mean it just you just you ask how harmful can that be if i'm a juror and i hear from an expert that urban african americans which apparently there's no question that uh mr akbar is 30 times more likely to be dangerous i don't see how that's not deficient and and and ultimately perhaps prejudicial your honor i i would like it's just a question i'm not going to argue i understand your your question is poignant and well obviously right well taken but i would ask your honor to take a look at the actual testimony that is at issue in this case the district judge in the post and in the rule 60b opinion carefully carefully set forth what the testimony that was being challenged as compared to what was the testimony in buck we naturally your honor would disagree with uh uh our honorable opponent's characterization of that testimony essentially what happened here was the prosecutor in direct examination called for demographic information concerning the frequency of a particular diagnosis anti-social personality disorder what the prosecutor perhaps ineptly and perhaps unwisely was attempting to show that because the frequency of this uh of this thing of this particular diagnosis it does not lead to persons who have been diagnosed with this uh mental illness mental disease to commit violent murders the prosecutor was attempting to to milk to to to attack the mitigating aspects of dr eisenberg's testimony and again i would say ineptly invited dr eisenberg to comment on the demographics dr eisenberg was not saying that african-americans are 30 times more likely to commit murder or 30 times more likely to be the anti-social personalities what dr eisenberg was saying was as in many many types of diagnosis psychiatric or physical sometimes demographic demographic studies are done and sometimes demographics will some comparisons will be made as to what the frequency of a particular diagnosis is within given groups of of population let me ask you this is it everyone seems to be assuming that uh mr ackbar comes from i don't know kind of urban maybe poverty stricken uh background is that clear in the record i mean ashtabula is pretty much as i understand it a rural community is is review of the record uh indicates yes that uh the parties seem to my my reading of the record indicates the parties seem to agree with with that proposition this this would be some maybe you can point you probably can't point the record where that is but you're talking about a a community that's i mean i think the whole county might be 20 000 people or maybe it's the city um that's pretty you know agricultural i'm just i don't know it beyond that but uh are we just to accept that he's from this urban uh background maybe it doesn't make a difference your honor that's a that's a that's a good point uh but i think more more importantly it seems as though the quest the i mean i think the testimony did link those two concepts yeah i guess i just can't imagine an attorney presenting an expert not having prepared that expert to to to know that there'll be testimony uh about race as we have been discussing here um it just uh i it's just beyond me to see how that can be uh helpful and and either he prepared the the the expert and knew he was going to testify to that uh or he just didn't know uh either way it's pretty pretty bad preparation on part of an attorney i would i would submit your honor that these are difficult questions but one thing to keep in mind is that when one is using an expert uh as a witness an attorney quite often relies on on the expert to anticipate what attacks the expert could expect on his his opinions and any any types of cross-examination that are presented by the other side and dr eisenberg never supported his you know this opinion of i don't know 15 to 25 or 30 percent of urban african-americans having antisocial personality and he says it but i didn't see anywhere in the transcript where there's really any support or any challenge by anybody just sort of this acceptance that that's the case your honor i did some uh maybe uh i don't know maybe uh foolishly perhaps i did so i tried to do some research on this uh with just general uh searches and i could not find anything in terms of uh i found one study that referenced demographic studies of of antisocial social personality diagnosis there was one study out there where someone undertook to do that but i could not find anything problem here that it was the prosecutor who asked the question question in urban african-american males probably in the neighborhood of 15 to 25 maybe even 30 have the apd and then the problem is that eisenberg runs with this question that prosecutor asked and then the problem is that the defense lawyer runs with this and makes it worse and then in closing argument the defense lawyer talks about this again and the prosecutor talks about this again so the the prosecutor put this in and eisenberg blindly says yes and the next question of the prosecutor those 30 percent or take the percent of urban african males who have antisocial personality disorder very very few of them commit murder that's true so so then eisenberg goes off on this 30 percent tangent and your honor my my look at this and it's in context what was happening here was the prosecutor was attempting to again undercut the mitigating value of this diagnosis the prosecutor wasn't suggesting that oh you know oh yeah he's an antisocial person well that's a good reason to sentence him to death uh what he was saying is even though he was diagnosed with an antisocial personality disorder that was not a reason that was not mitigating that was not a reason to to not sentence him to death for his crime if i could if i could sort of focus us back on whether or not um the procedural default has been addressed here sufficiently under our precedent are we as a court of appeals federal court of appeals able to evaluate whether the ohio court of appeals properly applied race judicata your honor yes under hill versus mitchell the court held that under certain circumstances a court in federal habeas corpus can conclude that the ohio court of appeals or ohio court erroneously applied the race judicata doctrine that is true however your honor at the same time is it bears emphasis here that this cause and prejudice argument was not made to the district court he jones did not say that oh my appellate lawyer was ineffective for not raising this issue he never said that and so we would submit your honor that it is difficult to see how the district court's decision can be overturned on appeal for a failure to recognize a cause for a default which was never presented all right mr willie i think i mr willie i agree with you the ineffective assistance of appellate council was not raised in the in the district court however uh race judicata was the the argument that the ohio courts improperly applied their race judicata rule and therefore that is an excuse to to overcome procedural default how do you how do you argue against that because that is i argue that the that the that the uh state court clearly properly applied race judicata again your honor this claim centered on the trial record it may have expanded how about that how about the new testing that was conducted that wasn't in the trial record your honor that would amount to although there can be subtle differences of opinion here in essence what you're talking about is a new different claim of ineffective assistance of counsel as i said before it's one thing to say that counsel was ineffective because uh it is an apt handling of an expert witness resulted in particular uh uh he he could have brought more uh he he should have emphasized more mitigating evidence and he uh put evidence on that was conflicting it's another thing to say well he completely uh blew it in terms of i mean dr eisenberg's uh opinions and diagnosis were completely wrong we can show that now that would be something that would be perhaps a it would be a another theory of ineffectiveness that might be subject to evidence to horse the record so what about the turner affidavit why why is that not sufficient to be evidence to horse the record that would allow us to investigate the iac claim de novo once again i think as the state court reasonably concluded if you're essentially relying on something which was in the record or apparent in the record that that you can have another expert render a different opinion based on those based on those facts then that certainly is not a evidence to horse the record but if turner re-evaluated jones akbar if turner met with him four times and and had jones akbar undertake various tests and then turner based their their conclusion on those four interviews and four tests would that be enough to be evidence to horse the record for this particular case no because it would it would dramatically change the claim that was presented again uh once you know in applying race judicata of course you first have to look at the precise claim that's presented and okay if we disagree if we disagreed with you and said the claim is that broad would you agree that this is evidence that's outside the record and and therefore uh excuses the procedural default if we if we just disagreed with your characterization as to the narrowness of the claim i would have to say yes your honor i would say that that if indeed but i would think that uh that that that broad characterization of a claim would i think result in a number of difficulties i mean no well you answered my question that's all and uh i just may view the claim broader than you that's all and of course here your honor too is that also it also is important as to how a reasonable court would view the claim i mean would the the district court here is faced with the claim and the district court filled in some some blanks here i mean the district court said well he must mean apparently he's arguing that because the evidence was conflicting and and and because uh uh it maybe was not as uh it was not as mitigating as was more mitigating than uh he might have presented better mitigating evidence the district court that's what the district court was faced with and the district court was not faced with numerous other arguments in terms of what uh what the results of counsel's ineffectiveness might have been and again all the court can do is deal with the case that deal with the claim that was presented incidentally uh as well that the district court compared the test dr eisenberg's testimony and found that actually his testimony was fairly consistent with the testimony of the other expert again on the theme of the terrible uh the terrible environment uh which the defendant suffered through uh and and the terrible uh consequence individual consequences that he faced in his life i mean there was some pretty poignant observations there about his mother committing suicide uh his very very very uh i thought poignant mitigating points brought out in the testimony it the key here again is this too uh we would think uh it is well established uh under gonzales versus crosby that in a context of the rule 60b motion the court cannot address the claim here the district court said that this was a proper in part 60b motion because it was challenging the court's procedural default holding the court noted that it could not address the merits of the claim okay but because it could not since since we have granted a uh i mean we can't now right i mean we're not limited to the 60b appeal because we've expanded the the co-op your honor i would say that in terms of in granting a certificate of appealability on rule on the on the grounds 24 the court is to review the district court's decision on the ground that was actually presented in the petition and that petition on ground 24 and not necessarily 60b right that's right and all but by the same token we would point out that there was no argument it while it's true buck versus davis was the was it was the legal lynchpin of his